UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| EDWYN ROLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14CV166 ACL |
| | ) | |
| IAN WALLACE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Edwyn Roland, an inmate at the Southeast Correctional Center ("SECC"),

brought this action under 42 U.S.C. § 1983 against two[1] defendants employed at SECC in their

individual capacities, alleging violations of his constitutional rights. This matter is before the

Court on the Motion for Summary Judgment of Defendants Ryan Degen and Michael Vaughn.

(Doc. 59.) For the following reasons, the Court will grant the motion in part, and deny the

motion in part.

**I.      Background**

In his Amended Complaint, Roland claims that Defendant Ryan Degen, a Correctional

Officer at SECC, violated his Eighth Amendment rights by using excessive force against him on

December 9, 2013. Roland alleges that Defendant Degen intentionally "rammed the chuck-hole

into [Roland]'s hands causing physical injury." (Doc. 9, p. 8, ¶7.) Roland also asserts a First

Amendment retaliation claim against Defendant Degen.

Roland claims that Defendant Michael Vaughn, a Correctional Officer at SECC, violated

his Eighth Amendment rights by failing to obtain medical care for his injuries resulting from the

---

[1]Roland's claim against Ian Wallace was dismissed as legally frivolous pursuant to 28 U.S.C. §
1915(e)(2)(B). (Doc. 10.)

alleged excessive force incident. He further argues that Vaughn "did nothing to try to remedy the wrong" after he was informed of the alleged excessive use of force incident. (Doc. 9 at p. 12 ¶ 27.)

Defendants have moved for summary judgment on all of Roland's claims. Roland filed a Response in Opposition to Defendants' Motion, to which he attached three purported affidavits of inmates supporting his account of events. (Doc. 69.)

Defendants filed a Motion to Strike Roland's Exhibits. (Doc. 74.) In an Order dated January 11, 2017, the Court granted Defendants' Motion to Strike as to the Affidavit of Jamar Williams, and ordered this exhibit stricken. (Doc. 80.) The Court denied Defendants' Motion to Strike as to the statements of Marquise Taylor and Kevin Harrison. Defendants were granted leave to take the depositions of Taylor and Harrison, and were granted an extension of time to file their Reply. (Doc. 82.)

On March 13, 2017, Defendants filed a Reply, to which they attached deposition testimony of Taylor and Harrison. (Doc. 83.)

## II.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence,* 358 F.3d 982, 985

(8th Cir. 2004). "Instead, the dispute must be outcome determinative under prevailing law." *Mosley v. City of Northwoods,* 415 F.3d 908, 910-11 (8th Cir. 2005) (internal quotations omitted). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the nonmoving party – as long as those facts are not 'so blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Reed v. City of St. Charles, Mo*., 561 F.3d 788, 790 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion. Local Rule 4.01(E) provides:

A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

(emphasis added). Even so, where a plaintiff fails to respond to a motion for summary judgment, the Court should not treat such a non-response as sufficient to dispose of the motion. *Lowry v. Powerscreen USB, Inc.,* 72 F. Supp.2d 1061, 1064 (E.D. Mo. 1999) (citing *Canada v. Union Electric Co.,* 135 F.3d 1211, 1213 (8th Cir. 1997)). "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." *Id.* "In so ruling, even on an unopposed motion for summary judgment, the court should review the facts in a light most favorable to the party who would be opposing the motion." *Id.*

## III.    Facts

As an initial matter, Defendants argue that Roland did not respond to Defendants' statement of undisputed facts in accordance with Local Rule 7–4.01(E), and that the facts should, therefore, be deemed admitted. It is true that Roland did not respond to each of Defendants' facts with specific citations to the record. Roland did, however, file "Plaintiff['] s Statement of Disputed Factual Issues," in which he "submits the following list of genuine issues of material fact that require the denial of the defendants' motion." (Doc. 70 at p. 2.) Roland then sets out his own version of the events. Roland has also submitted exhibits in support of his claims, including the inmate statements previously referenced, and his own sworn declaration in opposition to Defendants' Motion. The Court broadly construes and affords a liberal

construction to pro se pleadings. *Johnson v. Arden*, 614 F.3d 785, 798 (8th Cir. 2010). The Court will consider Roland's responsive pleadings in determining whether Defendants are entitled to summary judgment.

The following facts are taken from Defendants' Statement of Uncontroverted Material Facts and Roland's Statement of Disputed Factual Issues, with any disputes noted:

On December 9, 2013, Defendant Ryan Degen and Correctional Officer Brett Hays were escorting Nurse Dana Degen,[2] LPN, who was making regularly scheduled medical rounds in Housing Unit 2 of SECC. During their walk in A-wing of Housing Unit 2, the escort stopped by Roland's cell so that Nurse Degen could provide a medical services request form to Roland. After Nurse Degen was finished with medical pass at Roland's cell, Nurse Degen and Officer Hays proceeded down the walk to continue the medical pass.

What happened next is disputed by the parties. Defendants claim that Roland requested that Defendant Degen allow him to throw trash out of his cell before he moved on. Defendants note that it is a common practice for correctional staff to open the food ports of inmates in order to allow them to throw away trash in their cells. Defendants state that Defendant Degen consented to Roland's request and opened the food port to Roland's cell to allow him to hand Degen trash. Roland began talking and took too long to gather his trash and Degen needed to rejoin the escort, so he shut the food port without taking any trash from Roland. Defendants state that Roland was never near the food port or the cell door, and that Degen did not order Roland to "cuff up." Defendants contend that no injury to Roland was observed by Defendant Degen, Officer Hays, or Nurse Degen, and Roland did not tell Nurse Degen that he had an injury.

---

[2]Roland contends that Nurse Degen is married to Defendant Degen. Defendants do not address the relationship between Nurse Degen and Defendant Degen.

5

Roland's version of the events differs. Roland denies that he asked Degen to allow him to throw trash out of his cell. Instead, he claims that Degen stated to him "How did that IRR go you little bitch." (Doc. 69-1 at p. 2.) Roland claims that he responded to Degen "Fuck you, you coward," and walked away from his cell door. *Id.* After he walked away, Degen stated "Oh yeah? Now cuff up you little bitch." *Id.* Roland states that, as he placed his hands outside the chuck hole to submit to restraints, Degen rammed his hands with the chuck hole door. Roland alleges that he yelled loudly in pain to Defendant Degen, Nurse Degen, and Hays, and Defendant Degen walked away as if nothing had happened. He contends that his left ring finger was split open, bleeding, red, and swollen, and his left middle finger was swollen. Roland submitted affidavits from other inmates who claim to have witnessed the incident, which are similar to Roland's account.

The parties agree that Roland complained of an injury to his fingers to two different correctional officers later that day, and requested medical assistance. Correctional Officer Charles Brown was performing a security check of A wing of Housing Unit 2 when Roland stopped him because he claimed he had an injury to his fingers and requested medical assistance. Officer Brown testified that he observed Roland's hand and fingers, but Roland did not have an injury to his hands or fingers. (Doc. 61-7 at p. 1.) Officer Brown indicated that he informed the bubble officer that Roland requested medical attention at the end of his shift. *Id.* at p. 2.

On the same day, Correctional Officer Hollie Dysinger was doing a security walk when Roland called her to his cell because he claimed he needed medical attention. Officer Dysinger testified that she observed Roland's hand and did not see any injuries. (Doc. 61-6 at p. 1.) She stated that Roland began to strike his cell door in protest when Roland demanded that she get Sergeant Vaughn and she initially refused. *Id.* at p. 1-2. Officer Dysinger testified that she then

went to the control room and informed Sergeant Vaughn that Roland claimed he had an injury and that he wanted to see him.  *Id.* at 2.

The parties agree that Vaughn then went to Roland's cell in order to speak with him about his alleged injuries.  Defendant Vaughn testified that he observed a small scratch on one finger just below the nail, and that he advised Roland to complete a medical services request form to obtain medical attention.  (Doc. 61-1 at p. 1-2.)  Vaughn contends that he also contacted the medical unit at SECC, and informed them of Roland's request for medical attention.  *Id.* at 2.

Defendants argue that Roland was seen by medical staff the next day, December 10, 2013, and no injuries were noted; whereas Roland contends that he did not see medical staff until December 12, 2013.[3]  It is undisputed that Roland received medical treatment from a nurse on December 12, 2013, at which time it was noted Roland reported that his hand was caught in the food port on December 9, 2013, and that his hand was cut and was swollen until that day.  (Doc. 61-8 at p. 3.)  The nurse noted a "small cut" on the fourth digit of Roland's left hand, with no swelling and full range of motion of the hand.  *Id.*  Roland was given Bacitracin for his "open wound" and was instructed to keep his finger iced until it healed.  *Id.*

## IV.    Discussion

In their Motion for Summary Judgment, Defendants argue that they are entitled to judgment as a matter of law on Roland's excessive force claim because Roland failed to support his allegations that Defendant Degen smashed his hand in the food port.  Defendants contend that Roland fails to establish a First Amendment retaliation claim against Degen because Roland cannot show an adverse action was taken by Defendant Degen.  With regard to Defendant

---

[3]The institutional medical records submitted by Defendants to support this claim note only that Roland refused Vitamin D medication on December 10, 2013.  (Doc. 61-8 at p. 2.)  There is no indication that Roland was seen for his complaints of a hand injury, or was otherwise examined on that date.

Vaughn, Defendants claim that Roland cannot establish liability based upon respondeat superior. Defendants further claim that Roland fails to establish an Eighth Amendment claim against Defendant Vaughn for deliberate indifference to serious medical needs because Roland did not have an objectively serious medical need. Finally, Defendants contend that they are entitled to qualified immunity because Roland has not demonstrated the violation of a clearly established right.

In his Response, Roland argues that there are genuine issues of material fact that preclude summary judgment for Defendants on Roland's excessive use of force claim. Roland states that the affidavits and declarations of the parties "are squarely contradictory as to force being used, or if force was ever used, and why it was or was not used." (Doc. 69 at p. 5.) Roland contends that Defendant Vaughn failed to report the incident, failed to contact medical staff, failed to discipline Degen, and otherwise did not attempt to remedy the wrong. (Doc. 69-2 at p. 2.) He further argues that the Inspector General of Missouri sent an investigator to investigate his allegations, and that the investigator found that Roland's allegations of excessive force were supported. (Doc. 69 at p. 3-4.) Roland states that Defendant Degen resigned in April of 2014, as a result of the investigation. *Id.* at 4. [4]

Defendants, in their Reply, argue that the statements Roland has submitted do not create a genuine issue of fact on his excessive force claim. Defendants contend that Roland's excessive force claim fails because he can show only de minimus force was used. They further argue that Roland fails to establish a retaliation claim, or any claim against Defendant Vaughn.

---

[4] Both parties have referenced an investigation of the alleged excessive force incident. The Court has not been provided with any report resulting from the investigation, and Defendants do not address Roland's allegations that the investigation substantiated his claim of excessive force or that Degen was asked to resign as a result of the investigation. Institutional records Roland has submitted do, however, confirm that Degen ultimately resigned as of May 12, 2014. (Doc. 1-1 at p. 50.)

The undersigned will discuss Defendants' claims in turn.

## A.    Excessive Force Claim Against Defendant Degen

Section 1983 provides a cause of action for a person who is injured as a result of being deprived of "any rights, privileges, or immunities secured by the Constitution" by a person acting under "color of state law."  42 U.S.C. § 1983.

"The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).  Nevertheless, the "Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotations omitted).

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Whitley v. Albers,* 475 U.S. 312, 319 (1986) (quotation omitted).  "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."  *Id.*  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 6–7.  *See Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010).

Defendants first contend that they are entitled to summary judgment on Roland's excessive force claim because Defendants carried their burden to show there was an absence of a genuine dispute of any material fact by providing supporting affidavits of two independent witnesses showing no excessive force took place. Defendants argue that the evidence Roland has submitted fails to create a genuine dispute as to a material fact.

Defendants provided the Affidavits of Nurse Degen and Officer Hays. In her Affidavit dated July 1, 2016, Nurse Degen states that she provided a medical services request form to Roland when she was making rounds on December 9, 2013, while escorted by Defendant Degen and Officer Hays. (Doc. 61-4 at p. 1.) Nurse Degen stated that she did not observe Defendant Degen interact with Roland or open the food port. *Id.* at 2. She further states that she did not observe and was not made aware of any injury to Roland. *Id.*

Similarly, Officer Hays states in his July 8, 2016 Affidavit that he and Defendant Degen escorted Nurse Degen while she performed medical pass in Housing Unit A on December 9, 2013. (Doc. 61-3 at p. 1.) Officer Hays states that, after Nurse Degen provided Roland with a medical form and he and Nurse Degen continued on with the escort, Roland requested that Degen allow him to throw trash out of his cell. *Id.* Officer Hays states that Defendant Degen then opened the food port to allow Roland to throw trash out. *Id.* at p. 2. Officer Hays contends that he did not observe Roland get near the food port, he did not hear Defendant Degen tell Roland to "cuff up," nor did he observe any injury to Roland. *Id.* He states that Roland never told him or Nurse Degen that he had any injury. *Id.*

The only statement of Defendant Degen submitted by Defendants is contained in an inter-office communication dated December 23, 2013, from Degen to "CCMI C. McIntyre." (Doc. 61-5 at p. 2.) In this statement, Degen states as follows:

Be advised that on 12-19-2013, I COI R. Degen conducted med pass with COI B Hays. During the time of passing by 2A-210, Offender Roland, Edwyn engaged in conversation with me by first asking what the current time was. He then moved to the back of the cell and began gathering trash by his bunk. He requested to throw his trash out, and with another officer (COI B Hays) near the cell, I opened the food port. Offender Roland then began taking his time and talking instead of gathering trash so I shut the food port to continue assisting with med pass. At no time did Offender Roland ever put his hands on or near the food port. I had to review camera[5] on this incident because there was never an issue reported so my memory had to be refreshed. If any more information is needed, please advise.

*Id.*

In response to Defendants' Motion for Summary Judgment, Roland has submitted the statements of Marquise Taylor, Kevin Harrison, and Roland. In his Affidavit dated December 11, 2013, Marquise Taylor states that he witnessed Nurse Degen talking to Roland on December 9, 2013, for about sixty seconds. (Doc. 69-3 at p. 20.) Taylor states that Defendant Degen and Officer Bret Hays were escorting Nurse Degen. *Id.* at p. 21. Taylor testifies that, after Nurse Degen walked away from Roland's cell, Defendant Degen approached Roland's cell door, called Roland a "little bitch," and told Roland to cuff up. *Id.* He states that Roland immediately complied and submitted to wrist restraints. *Id.* Taylor testifies that Defendant Degen then "blatantly and sadistically slammed inmate Roland's hands in the chuck hole and walked away." *Id.* Taylor states that Officer Hays witnessed this entire incident. *Id.*

Defendants argue that the Affidavit of Marquise Taylor cannot be considered competent evidence for purposes of summary judgment because Taylor's deposition testimony is squarely contradictory with his Affidavit. Taylor testified at his February 9, 2017 deposition that he did not remember Roland from SECC, and he did not remember any interactions between Roland and any corrections officers. (Doc. 83-1 at 5-7.) Taylor testified that he did remember

---

[5]The Court notes that, despite references in the record to camera footage of the incident at issue, the footage has not been provided to the Court.

Defendant Degen, and that he never saw Degen assault or mistreat an offender. *Id.* at 8-9.

Taylor stated that he did not remember signing a document regarding Roland. *Id.* at 11.

Taylor's deposition testimony reveals that, at best, Taylor has no memory of the incident three years later. When asked by Defendants' attorney if he remembered signing a piece of paper, Taylor responded "If you can kind of tell me what this is about and you can say the paper that I signed what that paper was about, then maybe I could remember." *Id.* at 11. There is no indication that Defendants' attorney provided any information about the incident at issue to refresh Taylor's recollection. Nonetheless, Taylor's deposition testimony that he never saw Defendant Degen assault or mistreat an offender appears contradictory to the testimony provided in his Affidavit.

Roland has also submitted the Declaration of Kevin Harrison, dated December 10, 2013. (Doc. 69-3 at p. 22-23.) Harrison states that he was confined in a cell with Roland on December 9, 2013. *Id.* at 22. Harrison alleges that he observed Roland talking to Nurse Degen for a moment when she was passing out medical needs forms while being escorted by Officer Hays and Defendant Degen. *Id.* at 22-23. He states that, after Nurse Degen left the cell, Defendant Degen stated to Roland "Won't you file a complaint on that to[o] you little bitch." *Id.* at 23. Harrison claims that Roland responded "Fuck you, you coward." *Id.* He states that Degen then came to the cell door, opened the steel food port, and directed Roland to "cuff up." *Id.* Harrison alleges that, when Roland placed his hands out the food port to comply with Degen's directive, Degen "rammed the steel food port into Edwyn Roland's hands and called Roland a bitch as he walked away, causing his fingers to be split open, bleeding, swollen, and bruised." *Id.* Harrison states that Roland told Officers Brown and Dysinger and Sergeant Vaughn what happened, but medical staff never came. *Id.*

Defendants argue that the Declaration of Kevin Harrison has many of the same problems as Taylor's and cannot be considered competent evidence for purposes of summary judgment. Defendants claim that, while Harrison's Declaration alleged that Defendant Degen acted intentionally, his deposition notes that "I can't say it was intentional," and "I can't say it was or was not an accident." (Doc. 83-2 at pp. 52, 53.)

A review of the relevant deposition testimony reveals that Harrison's testimony is consistent with his Declaration. When asked by the attorney for Defendants what he witnessed, Harrison responded as follows:

> Well, Edwyn Roland, he was asking the nurse about something. I heard him keep calling her. She never came to the door. But, I heard Degen, Officer Degen ask him about something, about what happened with his IRR that he filed against him.
> And Roland said he wasn't talking to him, he was talking to the nurse. I knew Degen called and said, excuse me what he said, he said something to the effect of "Shut up, you little bitch." As he was walking away Roland said something back to him, "If I'm a bitch, you a bitch."
> So Officer Degen came back and opened the food port with the key and told him to stick his hands out and cuff up. He asked him, "What for?" He said, "Cuff up." He turned around to cuff up. He put his fingers out the door, his hand out the door. Officer Degen slammed the chuck hole shut on his fingers.
> He asked for Nurse Degen to come and evaluate him because his finger was cut and bleeding. And they never came back to see him that day. I don't remember who the sergeant was. But he actually talked to the sergeant.
> What is the sergeant? I think it was Sergeant Vaughn. I think Vaughn was still working here at that time. And they said they would call the nurse and get him evaluated. That never happened for like three of four days. He ended up having to put in an MSR to get evaluated for the finger. At that time it was all swollen and purplish.

(Doc. 83-2 at p. 5-6.)

Defendants' attorney later asked Harrison if he remembered telling an investigator that he did not think Defendant Degen intentionally tried to close the chuck hole on Roland's hands, to which Harrison responded "No." *Id.* at 9. Counsel next asked Harrison if he thought it "may have been an accident him closing the chuck hole." *Id.* The following exchange occurred:

13

[Harrison]: As I say, I don't know his exact intention. I can't say it was intentional. The probability of not being intentional, because of how you had to close the chuck hole. The chuck hole goes up. It is not like it accidentally fell down. You have to push up on the chuck hole to close it.

[Defendants' Attorney]: But you don't remember telling the investigator it may have been an accident?

[Harrison]: No. I don't remember that. As I say, I can't say for sure it was or that it wasn't.

[Defendant's Attorney]: That it was or was not an accident?

[Harrison]: Yeah. Like I said, I don't know his true intention. I can't say it was or was not an accident. It seems unlikely it could be an accident, if you have to push the chuck hole up with that force.

*Id.* at 9-10.

Defendants mischaracterize Harrison's deposition testimony in arguing that it was contradictory to his Declaration. Consistent with his Declaration, Harrison testified that Defendant Degen approached Roland with questions about an IRR Roland filed against him, and then proceeded to slam the chuck hole on Roland's fingers. Harrison's testimony that he could not know Defendant Degen's state of mind does not refute his earlier account of what he observed during the incident. Significantly, Harrison denied ever stating that the incident was an accident, and noted twice that an accident was unlikely given the mechanics of the chuck hole. Thus, the Court disagrees that Harrison's deposition contained "inconsistencies and contradictions"[6] which precluded it from being considered competent evidence for the purposes of summary judgment.

---

[6]The only other inconsistency Defendants cite is set out in a footnote in their brief. (Doc. 83 at p. 8 n. 4.) Defendants note that, in his Declaration, Harrison indicates that Nurse Degen actually stopped at the cell to talk to Roland, whereas he states in his deposition that she did not stop and talk to Roland, despite Roland's attempts to talk to her. This inconsistency, however, is immaterial to Harrison's account of the actual excessive force incident.

Roland has also provided his own sworn Declaration, in which he sets out his account of the incident as previously discussed. (Doc. 69-1.)

The undersigned finds that Roland has provided sufficient evidence to create a genuine dispute of fact regarding whether Defendant Degen used excessive force. The parties present two completely different accounts of what transpired between Defendant Degen and Roland after Nurse Degen and Officer Hays walked away. Roland has supported his version of the events with his own sworn testimony, as well as the testimony of two witnesses. While Defendants have pointed out inconsistencies between Taylor's Affidavit and his deposition testimony, Harrison's statements regarding the alleged excessive force incident are consistent and supportive of Roland's account. Harrison was in the same cell as Roland when the incident occurred, and authored his Declaration on the day after the incident. Based on this evidence, a reasonable jury could find for Roland on his claim of excessive force.

Defendants next argue that, even if this Court determines that Roland has created a genuine dispute of fact, Roland's claim fails because he can only show de minimus force was used. Defendants' argument is unavailing.

As previously noted, the core judicial inquiry in analyzing an excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson*, 503 U.S. at 6-7). Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. *Treats v. Morgan*, 308 F.3d 868, 872

(8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7). "'[T]he extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied, is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim.'" *Santiago*, 707 F.3d at 990 (quoting *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010)).

Defendants argue that *Leonard v. Young*, No. 4:09CV1432AGF, 2011 WL 855646, (E.D. Mo. Mar. 9, 2011), involved similar facts and the Court found that the plaintiff's injury resulting from his hands being caught in a food port were de minimus. In *Leonard,* the defendant correctional officer argued that the plaintiff inmate refused to submit to his request to remove handcuffs. *Id.* at *2. The officer argued that, after several attempts to remove the handcuffs, the officer decided to close the food port opening and accidentally caught the inmate's hands in the food port while doing so. *Id.* The inmate claimed that he did not comply with the officer's first request to put his hands through the food port opening, but complied the second time he was asked and that he requested to see the officer's supervisor at that time. *Id.* He alleged that the officer then shoved his hands back through the food port in a rough manner, injuring his thumb and causing pain and bleeding. *Id.* The Court found that the inmate's excessive force claim failed because his injuries were de minimus, and there was no showing that the officer's actions were malicious or sadistic. *Id.* at * 4.

*Leonard* is distinguishable from the instant case because if Roland's version of the facts is true, they are sufficient to show that Degen's actions were malicious or sadistic. Roland claims that Degen approached him to taunt him when he was confined in his cell and posing no risk of harm to Degen. Degen then told him to cuff up solely for the purpose to cause harm to him by smashing his hand with the food port door. Degen does not allege that he applied force in a good faith effort to maintain discipline, nor does he claim that the force was applied

accidently. Rather, he denies that any force was applied at all, and claims that Roland was not near the food port door when he closed it. Defendants make no attempt to explain the cause of Roland's injury. Consequently, Defendants' argument that they are entitled to summary judgment because Roland's injuries were de minimus lacks merit.

The Court is required to view the facts in favor of Roland and to resolve all doubts in Roland's favor. With this in mind, the Court finds that the facts alleged in Roland's statement, and the statement and deposition testimony of Harrison create an issue of material fact as to whether Degen used excessive force during the December 9, 2013 incident.

**B.      Retaliation Claim Against Defendant Degen**

Roland argues that Degen applied excessive force against him on December 9, 2013, in retaliation for Roland filing an IRR against him. The Court has found Roland's allegations sufficient to allege a First Amendment violation against Defendant Degen. (Doc. 10 at p. 4.)

Defendants argue that Roland's retaliation claim fails because there is no support that an adverse action—the alleged use of force—was taken. Defendants further contend that, even if such an action did occur, Roland is unable to show that the filing of a prison grievance motivated the action.

To prevail on a § 1983 claim for retaliation in violation of the First Amendment, Roland must demonstrate "(1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago*, 707 F.3d at 991. The filing of grievances and lawsuits are protected activity. *See Lewis v. Jacks,* 486 F.3d 1025, 1029 (8th Cir. 2007).

The undersigned has found that a genuine issue of fact exists as to whether Degen applied excessive force. Roland claims that Degen applied the use of force in retaliation for an IRR Roland had previously filed against Degen. Roland has submitted copies of institutional records noting that he filed an IRR against Defendant Degen on November 18, 2013. (Doc. 1-1 at p. 36.) Moreover, Roland's claim that Degen specifically referenced the IRR when he approached Roland's cell to initiate the alleged excessive force incident shows a causal connection between the protected activity and the adverse action. Thus, Roland has presented sufficient evidence to create a genuine issue of fact as to whether Degen retaliated against Roland in violation of Roland's First Amendment rights.

### C.     Roland's Claims Against Defendant Vaughn

Roland contends that Defendant Vaughn violated his constitutional rights by failing to report the excessive force incident, failing to contact medical staff, failing to discipline Degen, and otherwise failing to "remedy the wrong."

Defendants claim that Roland cannot establish liability based upon respondeat superior and fails to allege that Vaughn was personally involved in the excessive force incident. Defendants further argue that Roland fails to establish an Eighth Amendment claim against Defendant Vaughn for deliberate indifference to serious medical needs because Roland did not have an objectively serious medical need. The undersigned agrees.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights," *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990), and Roland must show that Defendants "personally violated the plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). The requisite personal involvement cannot be based upon *respondeat superior* or vicarious liability. *Canton v. Harris,* 489 U.S. 378, 385 (1989).

18

Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation[.]" *Parrish v. Ball,* 594 F.3d 993, 1001 & n. 1, 1002 (8th Cir. 2010) (internal quotations and citation omitted).

Roland does not allege that Vaughn directly participated in the constitutional deprivations he alleges he suffered at the hands of Degen. It is undisputed that Vaughn was not present during the alleged excessive use of force incident. Roland's Amended Complaint lacks any factual allegations from which the Court could infer that Vaughn had notice of a pattern of unconstitutional acts committed by subordinates or otherwise had notice that his supervision was inadequate and likely to result in a constitutional violation. Rather, Vaughn was simply the supervisor on duty the day the incident occurred. Roland's conclusory assertions that Vaughn failed to supervise and discipline Degen do not suffice.

Further, Roland's allegation that Vaughn failed to complete a use of force report regarding the incident in violation of prison policy does not state a claim under the Constitution. A federal court's inquiry is not whether prison regulation was violated but whether the Constitution was violated. *Griffin–Bey v. Bowersox,* 978 F.2d 455, 457 (8th Cir. 1992). Roland has not made an allegation that Vaughn violated the Constitution with his alleged conduct. As such, Roland has failed to state a claim against Vaughn in his supervisory capacity.

To the extent Roland alleges that Vaughn was deliberately indifferent to his medical needs in violation of his Eighth Amendment rights, this claim also fails. To state a constitutional claim for medical mistreatment, a plaintiff must plead facts sufficient to indicate a deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). "[The Eighth Circuit] ha[s] defined a serious

medical need as 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Camberos*, 73 F.3d at 176 (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)).

When an inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir. 1997). Moreover, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to show that the delay caused or exacerbated an objectively serious medical need." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (emphasis in the original) (abrogation on other grounds recognized by *Reece v. Groose,* 60 F.3d 487, 492 (8th Cir. 1995)). In *Beyerbach,* the Eighth Circuit found no constitutional violation where there was delay in treatment to an inmate's broken hand. *Id.* at 1326.

Defendants argue that Roland failed to establish a claim for deliberate indifference to serious medical needs because he does not show he had a serious medical need or that Defendant Vaughn was deliberately indifferent to any such medical need. Defendants specifically contend that Roland has produced no evidence that the delay in medical treatment had a detrimental impact on his condition. Roland does not address this claim specifically in his Response, other than again alleging that Vaughn "failed to contact medical staff." (Doc. 69-2 at p. 2.)

Although Roland denies receiving medical treatment for his injury on December 10, 2013, he admits that he was seen by a nurse on December 12, 2013. At that time, the nurse noted a "small cut" on the fourth digit of Roland's left hand, with no swelling and full range of motion of the hand. *Id.* Under these facts, the Court finds that Roland has failed to show that any delay

in treatment resulted in an adverse effect on his injury. Thus, Roland cannot establish that his medical needs were "objectively serious."

## D.    Qualified Immunity

Defendants also argue that they are entitled to qualified immunity on Roland's claims. Under Eighth Circuit law, "[q]ualified immunity protects government officials performing discretionary functions from liability for damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The court employs a two-part inquiry "to determine whether a lawsuit against a public official alleging a constitutional violation can proceed in the face of an assertion of qualified immunity." *Serna v. Goodno*, 567 F.3d 944, 951 (8th Cir. 2009). Courts are to "consider whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 951-52 (citation omitted). Further, courts ask whether the right was clearly established. *Id.* at 952. "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

The Court has found that genuine issues of material fact exist as to whether Degen applied excessive force maliciously and sadistically on December 9, 2013, and as to whether Degen subjected Roland to First Amendment retaliation. The law is well-established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause. *See Hudson*, 503 U.S. at 9-10. Further, "[a] citizen's right to exercise First Amendment freedoms 'without facing retaliation from government officials is

clearly established.'" *Baribeau v. City of Minneapolis*, 596 F.3d 465, 480-81 (8th Cir. 2010) (quoting *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007)).

Thus, Degen is not entitled to qualified immunity on Roland's excessive force or retaliation claims, and Defendants' Motion for Summary Judgment will be denied as to these claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **granted in part** and **denied in part.**

**IT IS FURTHER ORDERED** Defendants are granted summary judgment as to Plaintiff's claims against Defendant Vaughn and denied summary judgment as to Plaintiff's excessive force and retaliation claims against Defendant Degen. A separate partial judgment in favor of Defendants will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that this matter will be set for trial after a telephone conference with the parties is held on a date to be determined.


Dated: <u>March 31, 2017</u>

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE